ELIZABETH DAVIS

       Plaintiff,

v.                                                                                       Case No. 2:15-cv-436

**FALLS COLLECTION SERVICE, INC**.,
d/b/a **FINANCIAL CONTROL SOLUTIONS**,
as successor in interest to ACCOUNT
RECOVERY SERVICE, INC., and
**ACCOUNT RECOVERY SERVICE, INC**.

       Defendants.

## COMPLAINT

NOW COMES the Plaintiff, Elizabeth Davis, (hereinafter, "Davis" or "Plaintiff"), by and through her attorneys, Canfield & Lutz, LLC, and as and for her cause of action against the Defendants, Falls Collection Service, Inc., d/b/a Financial Control Solutions, as successor in interest to Account Recovery Service, Inc., (hereinafter, "Falls Collection Service", "Financial Control Solutions" or "Defendant") and Account Recovery Service, Inc., (hereinafter, "Account Recovery Service" , "ARS" or "Defendant") alleges and shows to the Court as follows:

### NATURE OF ACTION

1.  This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., and 42 U.S.C. §§ 1981, 1981a, and 1982, to correct unlawful employment practices on the basis of race (black), race based discrimination in the contractual relationship, and in retaliation for opposing discriminatory employment practices, as well as to provide appropriate relief to Elizabeth Davis who was adversely affected by such practices.

2. Defendants denied promotional opportunities to Plaintiff, subjected Plaintiff to less favorable terms and conditions of employment, unwanted hostile and abusive employment conditions, and terminated her employment because of her race (black), and in retaliation for Plaintiff exercising her rights to complain about the illegal employment practices of Defendants; with reckless indifference to her federally protected rights. Defendants prevented Plaintiff from enjoying the property rights, as are enjoyed by white citizens and further denied her the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, as are enjoyed by white citizens.

**PARTIES**

3. The Plaintiff, Elizabeth Davis, is an adult female resident of the State of Wisconsin, who currently resides at 1512 Schloemer Drive, West Bend, Wisconsin 53095. At all times relevant to this complaint, the Plaintiff was employed by Account Recovery Service.

4. At all relevant times, the Defendant, Financial Control Solutions, has continuously been a business with its principal offices located at N114 W19225 Clinton Drive, Germantown, Wisconsin 53022.

5. Upon information and belief, effective August 1, 2014, Financial Control Solutions purchased and merged with Account Recovery Service.

6. At all relevant times, the Defendant, Account Recovery Service has continuously been a business with its principal offices located at 3031 N 114th Street, Milwaukee, Wisconsin 53222.

7. Upon information and belief, effective August 1, 2014 Account Recovery Service was sold to and merged with Financial Control Solutions.

2

8. At all relevant times, Account Recovery Service and Financial Control Solutions have been employers engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g) and (h).

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case involves a federal question under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII"), and sections 101 and 102 of the Civil Rights Act of 1991, 42 U.S.C. §§1981, 1981a and 1982.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

11. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Wisconsin.

## FACTUAL ALLEGATIONS

12. Plaintiff began working for Defendants on or about July 20, 1997 as an Account Manager/Collector.

13. During her almost eighteen (18) years working for Defendants, Plaintiff received only one (1) or two (2) raises, while other, non-black, employees with less seniority than Plaintiff, continued to receive multiple raises.

14. Plaintiff, along with all other of Defendants' collections employees, had the same monthly collection goal. Plaintiff continued to meet that goal month after month, until the recession in 2012 when the Defendants lost several clients.

15. While the amount of work for Plaintiff and other co-workers decreased substantially, Defendants maintained the same pre-recession collection goals for its employees. Naturally,

3

Plaintiff and other co-workers had a difficult time reaching their monthly collection goal and often fell short.

16. In response, Defendants began to lay off employees. While Plaintiff was laid off approximately five (5) times, other non-black employees with less seniority; Richard Kingsley, Lynn Wiley, Chris Olson, and Kendra Jimenez continued to miss the same goal were only laid off once or not at all. Of those three non-black co-workers, Wiley and Jimenez were only laid off *after* complaints were made to Worgull about the disparate treatment.

17. On one of the layoffs which occurred in January, 2014, Worgull contacted Plaintiff on her cell phone while on her way into work and informed her that he cannot afford to pay her so he had to lay her off. Right after laying Plaintiff off, Defendants offered overtime hours to all the nonblack account managers/collectors. Additionally, Defendants hired two (2) more account managers/collectors while Plaintiff was laid off.

18. On another occasion, Plaintiff was laid off indefinitely for missing her goal by only $8.20.

19. Worgull also placed certain restrictions on Plaintiff and another black co-worker, Belva Smith, which were not placed on other non-black employees. Plaintiff and Smith were not permitted to send out any collection notices to debtors without first requesting permission from their supervisor, John Corbett. At the same time, other non-black co-workers with less seniority; Wiley, Kingsley, and Cindy Gabay consistently sent these collection notices without having to request permission. Additionally, when Plaintiff would request permission to send the notices, she would almost always be denied. These notices were helpful because they sometimes generated revenue and would help a Collector reach their monthly collection goals.

4

20. Additionally, Defendants maintained a Large Balance Queue (a set of large accounts $5,000 and higher) that Plaintiff and Smith were restricted from working on, while non-black employees with less seniority were allowed to work of them with no restrictions.

21. When Plaintiff asked Worgull why they were restricted from working on the accounts but others were not, he said he would look into it and get back to her; but he never did.

22. Throughout her employment with Defendants, Plaintiff had many paying accounts taken away from her by her supervisor, Corbett, and other non-black collectors who would keep the accounts for themselves. Plaintiff made numerous complaints about this to Worgull who did not do anything to fix the problem until finally giving a few of the accounts back to Plaintiff.

23. Defendants eventually instituted a rollback policy in which employees who missed their monthly collection goal for two (2) consecutive months would have one (1) dollar deducted from their hourly wage. Because Plaintiff was restricted from working on accounts from the Large Balance Queue, not permitted to send out any collection notices without approval from a supervisor, and had her paying accounts taken away from her; she was often unable to meet her monthly collection goals and had her hourly wage reduced numerous times.

24. On August 26, 2013 Plaintiff filed a wage and hour complaint against Account Recovery Service with the State of Wisconsin Department of Workforce Development Equal Rights Division (ERD). On December 10, 2014 the ERD decided in the Plaintiff's favor and found that Account Recovery Service did not consistently follow its own compensation system and also made retroactive deductions from the Plaintiff's pay.

25. On March 21, 2013, Plaintiff filed a charge with the EEOC against Account Recovery Service alleging discrimination based on her race (black), in violation of Title VII of the

5

Civil Rights Act of 1964, as amended. On August 7, 2014 Plaintiff amended the charge to include retaliation.

26. After Defendants were notified of the charge of discrimination by the EEOC, the discriminatory treatment Plaintiff was receiving became worse. In retaliation for going to the EEOC, the Defendants ignored their own rollback policy and started reducing Plaintiff's wage by $1.50 to $2 every month she did not meet her goal and not after two (2) consecutive months per the written policy.

27. During her employment with Defendants, Plaintiff was also subjected to racially motivated humiliation and harassment from non-black supervisors.

28. On February 3, 2013, after being questioned by Plaintiff and Smith about accounts that had been taken from them, Corbett stood up and yelled across the floor for all the other employees to hear that he was "sick of those people" and walked out of the office. Plaintiff and Smith complained to Worgull that same day that they felt that Corbett's statement of "those people" was racially motivated.

29. Plaintiff was also denied promotional opportunities by Defendants. In 2012 Plaintiff had requested a promotion to a Mentor position but was denied. Defendants had given the promotion and a $7.00 per hour pay raise to Gabay, a white employee with thirteen (13) years less seniority than Plaintiff.

30. In November, 2013 Plaintiff was offered same promotion to Mentor that had already been given Gabay a year prior. However, Plaintiff only received a $4.00 per hour pay raise; $3.00 less than what Defendants were paying Gabay, a white employee with thirteen (13) years less seniority than Plaintiff.

31. On February 3, 2014 Defendants demoted Plaintiff and took away her promotion and pay raise without explanation.

32. Plaintiff was laid off for the final time on or about June 15, 2014. In July of 2014, while laid off, Plaintiff received a certified letter from Defendants informing her that she was terminated.

33. Effective August 1, 2014 Account Recovery Service was sold to and merged with Financial Control Solutions.

## STATEMENT OF CLAIMS

As claims against the Defendants, Plaintiff alleges the following:

### COUNT I
### TITLE VII DISCRIMINATION BASED ON RACE

34. Plaintiff realleges and incorporates herein by reference all of the allegations contained in paragraphs 1 through 33 above, inclusive, with the same force and effect as though fully set forth and repeated within.

35. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., which prohibits discrimination by covered employers on the basis of race, color, religion, or national origin.

36. More than 30 days prior to the institution of this lawsuit, Plaintiff filed a charge with the EEOC alleging violations of Title VII by Account Recovery Service. All conditions, precedent to the institution of this lawsuit, have been fulfilled.

37. During Plaintiff's employment with Defendants, Defendants engaged in unlawful employment practices in violation Title VII, 42 U.S.C. § 2000(e) *et seq*. Such practices include, but are not limited to:

a. Subjecting Plaintiff to different terms and conditions of employment, levels of scrutiny, and discipline because of her race (black), than similarly situated white employees.

b. Denying promotional opportunities to Plaintiff that were given to white employees, because of her race (black)

c. Subjecting Plaintiff to harassment as well as unwanted, hostile, and abusive employment conditions because of her race (black).

d. Demoting and terminating Plaintiff because of her race (black) in reckless indifference to her federally protected rights.

38. As a result of Defendants' intentional discrimination, Plaintiff has suffered damages in the form of humiliation, pain, suffering, emotional distress, attorney fees and costs, loss of wages, loss of promotional opportunities, and other employment benefits.

**COUNT II**
**TITLE VII RETALIATION FOR EXCERCISING PROTECTED RIGHTS**

39. Plaintiff realleges and incorporates herein by reference all of the allegations contained in paragraphs 1 through 38 above, inclusive, with the same force and effect as though fully set forth and repeated within.

40. Defendants intentionally discriminated against Plaintiff by subjecting her to increased scrutiny and singling her out for selective and unwarranted discipline. Plaintiff was ultimately demoted and terminated in retaliation for Plaintiff exercising her rights to complain about the illegal employment practices of Defendants, specifically, discrimination based on race, in violation of Title VII, 42 U.S.C. 2000e, *et seq*., and in reckless indifference to her federally protected rights.

8

41.  As a result of Defendants' intentional discrimination, Plaintiff has suffered damages in the form of humiliation, pain, suffering, emotional distress, attorney fees and costs, loss of wages, loss of promotional opportunities, and other employment benefits.

## COUNT III
## 42 U.S.C. § 1981 DISCRIMINATION BASED ON RACE

42. Plaintiff realleges and incorporates herein by reference all of the allegations contained in paragraphs 1 through 41 above, inclusive, with the same force and effect as though fully set forth and repeated within.

43. Defendants intentionally discriminated against the Plaintiff on the basis of her race (black) in the terms and conditions of her employment in reckless disregard of her federally protected rights under the Thirteenth Amendment to the United States Constitution as protected by 42 U.S.C. § 1981.

44. As a result of Defendants' intentional discrimination and harassment, Plaintiff has suffered damages in the form of humiliation, pain, suffering, emotional distress, attorney fees and costs, loss of wages, loss of promotional opportunities, and other employment benefits.

## COUNT IV
## 42 U.S.C. § 1981 RETALIATION FOR EXCERCISING PROTECTED RIGHTS

45. Plaintiff realleges and incorporates herein by reference all of the allegations contained in paragraphs 1 through 44 above, inclusive, with the same force and effect as though fully set forth and repeated within.

46. Defendants intentionally discriminated against the Plaintiff on the basis of her race (black) by demoting and terminating her in reckless disregard of her federally protected rights under the Thirteenth Amendment to the United States Constitution as protected by 42 U.S.C. § 1981.

47. As a result of Defendants' intentional discrimination, Plaintiff has suffered damages in the form of humiliation, pain, suffering, emotional distress, attorney fees and costs, loss of wages, loss of promotional opportunities, and other employment benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Order Defendants to make Plaintiff whole by providing appropriate back pay, front pay, compensatory damages, punitive damages, pre-judgment and post-judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;

B. Grant to Plaintiff her attorney fees, costs and disbursements as provided by 42 U.S.C. § 12205 and all other applicable statutes and provisions;

C. Grant to Plaintiff whatever other relief this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this complaint.

Dated at Milwaukee, Wisconsin on this the 13th Day of April, 2015.

/s/ Jason Canfield
State Bar No. 1083007
Canfield & Lutz, LLC
Attorney for the Plaintiff
1437 N Prospect Ave, Suite 200
Milwaukee, WI  53202
Ph. 414.935.2810
Fax. 414.935.2821
Jason.Canfield@CanfieldandLutz.com

Case 2:15-cv-00436-WED   Filed 04/13/15   Page 10 of 10   Document 1